IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 13, 2025

## STATE OF TENNESSEE v. CHRIST M. CHRISTOPHER

**Appeal from the Circuit Court for Bedford County**
**No. 19484      Forest A. Durard, Jr., Judge**

_____

**No. M2024-00247-CCA-R3-CD**

_____

A Bedford County jury found the Defendant, Christ M. Christopher, guilty of two counts of rape of a child. The trial court imposed an effective sentence of forty years. On appeal, the Defendant challenges the length of the sentences imposed. He argues that the trial court misapplied two enhancement factors and imposed an effective sentence greater than necessary to achieve the purposes and principles of sentencing. Upon our review, we respectfully disagree and affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which J. ROSS DYER and KYLE A. HIXSON, JJ., joined.

William W. Gill, Assistant Public Defender – Appellate Division, Tennessee District Public Defenders Conference (on appeal); Donna Hargrove, District Public Defender; and Michael Collins and James R. Tucker, Jr., Assistant District Public Defenders (at trial), for the appellant, Christ M. Christopher.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Senior Assistant Attorney General; Robert J. Carter, District Attorney General; and Lisa Zavogiannis and Jeffrey D. Ridner, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

In June 2022, K.C. moved into the home of her sister and her sister's husband, the Defendant, while looking for employment and a place to stay.[1] She brought her two children with her, including the victim in this case. The victim was twelve years old and was developmentally delayed.

On November 14, 2022, a Bedford County grand jury charged the Defendant with two counts of rape of a child. During a trial that was held the following September, the victim testified that the Defendant penetrated her vagina on two separate occasions, once in the bathroom and again later in her bedroom during "cuddle time." The Defendant testified on his own behalf and admitted that he had "cuddle time" with the victim, but denied touching the victim "in a sexual way." Following the trial, the jury found the Defendant guilty on both counts of rape of a child.

At a sentencing hearing held on December 18, 2023, the State presented two witnesses: Jonathan Williams, the presentence report writer, and Detective Anthony Ferrucci of the West Seneca Police Department in New York. The Defendant did not testify.

Mr. Williams testified that the Defendant denied the offenses and reported no prior convictions or mental health diagnoses. Mr. Williams's search of national and state criminal records confirmed that the Defendant had no prior convictions or jail infractions during his pretrial detention. He conducted a risk and needs assessment, which yielded a low-risk classification, primarily due to the Defendant's consistent work history and lack of a criminal record. Mr. Williams was unable to obtain a victim impact statement for the report, but did include statements that the victim made regarding unrelated allegations involving the Defendant that occurred in New York.

Detective Ferrucci testified about three open investigations involving the Defendant in New York, including allegations by the same victim before her move to Tennessee. The trial court admitted evidence that complaints existed, but it declined to consider the underlying allegations due to concerns about the reliability of the evidence.

---

[1] To protect the minor victim's identity, we refer to her mother by her initials.

Following the proof and arguments, the trial court found that three enhancement factors applied to both counts: that the victim was particularly vulnerable due to age and developmental delay, Tenn. Code Ann. § 40-35-114(4) (2019); that the offense was committed to gratify the Defendant's desire for sexual pleasure, *id.* § 40-35-114(7); and that the Defendant abused a position of private trust, *id.* § 40-35-114(14). As to Count 2 involving the rape during "cuddle time," the court also applied enhancement factor (1) and found that the Defendant's conviction in Count 1 for the earlier rape in the bathroom was evidence of the Defendant's history of criminal behavior. *See id.* § 40-35-114(1). The trial court further determined that no statutory mitigating factors were present.

The court imposed a sentence of thirty years for the conviction in Count 1 and forty years for the conviction in Count 2. The court aligned the sentences concurrently, believing that consecutive sentences would be greater than necessary to serve the ends of justice.

The Defendant filed a timely motion for a new trial, which the court denied by a written order entered on January 22, 2024. The Defendant filed a timely notice of appeal twenty-five days later. *See* Tenn. R. App. P. 4(a).

## STANDARD OF APPELLATE REVIEW

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). As we discuss below, the Defendant challenges the length of the sentences the trial court imposed for each conviction. We review a trial court's sentencing determinations for an abuse of discretion, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). As such, this court is "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out" in the Sentencing Act. *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008).

In this case, the Defendant was convicted of two Class A felony offenses, and, at the time of the Defendant's offenses, the law required that he "be punished as a Range II offender." *See* Tenn. Code Ann. § 39-13-522(b)(2)(A) (Supp. 2021). Thus, the Defendant faced a sentencing range of twenty-five to forty years for each conviction. *See* Tenn. Code Ann. § 40-35-112(b)(1) (2019). The trial court's sentences of thirty and forty years, respectively, were within the applicable sentencing ranges. Moreover, as we discuss below, the trial court imposed its sentences in a manner consistent with the purposes and principles

of sentencing. As such, we accord a presumption of reasonableness to the trial court's sentencing decisions and review those decisions for an abuse of discretion.

**ANALYSIS**

The Defendant argues that the trial court abused its discretion by imposing sentences of thirty and forty years for his convictions. Although he agrees that the sentences are within the applicable sentencing ranges, he asserts that the trial court misapplied two enhancement factors and imposed a longer sentence than necessary to accomplish the purposes and principles of sentencing.

The State responds that the sentences are entitled to a presumption of reasonableness. It also asserts that even if the trial court misapplied an enhancement factor, the court's proper application of two other enhancement factors shows that it did not wholly depart from the purposes and principles of sentencing. We agree with the State.

In determining a sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the defendant on his own behalf; and (8) the result of the validated risk and needs assessment conducted by the Department of Correction and contained in the presentence report. *See* Tenn. Code Ann. §§ 40-35-102, 40-35-103, 40-35-210(b) (2019); *see also Bise*, 380 S.W.3d at 697-98. In addition, the sentence imposed "should be no greater than that deserved for the offense committed" and should "be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

Moreover, in establishing the length of a sentence within the applicable range of punishment, a trial court must consider, but is not bound by, the following advisory sentencing guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the

relative seriousness of each criminal offense in the felony classifications; and

(2)     The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c) (2019). In addition, the "sentence length within the range should be consistent with the purposes and principles" of the Sentencing Act. *Id.* § 40-35-210(d).

Although the trial court must consider applicable enhancement and mitigating factors, these factors are advisory only. *See Bise*, 380 S.W.3d at 699 n.33, 706. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is consistent with the purposes and principles of [the Sentencing Act]." *Carter*, 254 S.W.3d at 343 (citation and internal quotation marks omitted). To this end, we have also recognized that "a maximum sentence within the appropriate range, in the total absence of any applicable enhancement factors, and even with the existence of applicable mitigating factors, should be upheld as long as there are reasons consistent with the statutory purposes and principles of sentencing." *E.g.*, *State v. Chapman*, No. M2011-01670-CCA-R3-CD, 2013 WL 1035726, at *9 (Tenn. Crim. App. Mar. 13, 2013), *no perm. app. filed*.

## A.     APPLICATION OF ENHANCEMENT FACTORS

In this case, the Defendant argues that the trial court misapplied two enhancement factors: that the victim was vulnerable due to her age and developmental disabilities and that the offense was committed to gratify the Defendant's desire for sexual pleasure. *See* Tenn. Code Ann. § 40-35-114(4), (7). The State argues that each factor is supported by the record and appropriately considered by the trial court. We agree with the State.

### 1.     Enhancement Factor (4)

The Defendant first challenges whether the trial court properly applied enhancement factor (4). This factor permits a court to enhance a sentence when "[a] victim of the offense was particularly vulnerable because of age or physical or mental disability[.]" Tenn. Code Ann. § 40-35-114(4). When a trial court considers this factor, "[i]t should consider whether evidence in the record with regard to the victim's age or physical and mental attributes

demonstrated an inability to resist the crime, summon help, or testify at a later date." *See State v. Poole*, 945 S.W.2d 93, 96 (Tenn. 1997). Importantly, this "evidence, whether lay or expert testimony, must relate to the victim's physical or mental capacity at the time of the crime and not at the time of trial or sentencing." *Id.* at 97. Although the trial court must consider the evidence in the record, the evidence "need not be extensive." *State v. Lewis*, 44 S.W.3d 501, 505 (Tenn. 2001) (citation and internal quotation marks omitted).

In this case, the victim was described by witnesses as having significant developmental delays. At sentencing, the trial court noted that the victim did well in testifying, but was not "functioning at age level" during her testimony. It also described her as having "limited intellectual functioning" and observed that she "was definitely not functioning as a 13 year old[.]" During her own testimony, the victim confirmed that she was in "special classes" and had difficulty learning, reading, and remembering. She also acknowledged struggling to understand the words being discussed in the courtroom.

The record is not well developed as to the nature of the developmental disabilities, but taken as a whole, the preponderance of the evidence supports the trial court's application of this enhancement factor. The testimony at trial established that the victim possessed a developmental disability at the time of the Defendant's actions. The victim confirmed her limitations, and the trial court's observations confirmed that they affected her ability to testify at trial.

We conclude that the record supports the trial court's application of enhancement factor (4) to each of the Defendant's convictions. Notably, defense counsel did not meaningfully challenge the applicability of this factor, arguing instead that the court should give it little weight. The trial court appears to have partially considered that argument, as it accorded this factor the least weight among those it applied. The Defendant is not entitled to relief on this ground.

## 2. Enhancement Factor (7)

The Defendant next challenges whether the trial court properly applied enhancement factor (7). This factor permits a court to enhance a sentence when "[t]he offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement[.]" Tenn. Code Ann. § 40-35-114(7). In applying this factor, a trial court must examine the defendant's "motive for committing the offense." *State v. Arnett*, 49 S.W.3d 250, 261 (Tenn. 2001). However, the State need not prove that the defendant's desire for pleasure or excitement was his or her single motive. As our supreme court has

recognized, "[e]nhancement factor (7), unlike most of the other sentencing factors, calls into question a defendant's reasons for committing a crime.  Human motivation is a tangled web, always complex and multifaceted."  *State v. Kissinger*, 922 S.W.2d 482, 491 (Tenn. 1996).

Importantly, "[t]he mere absence of proof of some other motivation for committing the offense is insufficient to establish, by a preponderance of the evidence, that pleasure or excitement was the motive."  *State v. Appelt*, No. E2020-01575-CCA-R3-CD, 2022 WL 2236316, at *13 (Tenn. Crim. App. June 22, 2022) (citation and internal quotation marks omitted), *no perm. app. filed*.  Thus, our supreme court has required at least some objective evidence supporting the application of this factor.  *See Arnett*, 49 S.W.3d at 262.

In sexual offense cases, this objective evidence may include, but is not limited to, "sexually explicit remarks and overt sexual displays made by the defendant, such as fondling or kissing a victim or otherwise behaving in a sexual manner, or remarks or behavior demonstrating the defendant's enjoyment of the sheer violence of the rape."  *Id.* Other evidence may include when the defendant isolated the victim before sexually assaulting her.  *See, e.g.*, *State v. Zeigler*, No. M2017-01091-CCA-R3-CD, 2019 WL 484647, at *22 (Tenn. Crim. App. Feb. 7, 2019) (upholding application of factor in rape case where "[t]he trial court noted the Defendant's effort to 'orchestrate[] the absence of other individuals, including his daughter' when taking the victim to an isolated area"), *no perm. app. filed*.

In this case, the trial court observed that multiple motivations for the offense could exist, but that it only had evidence of a desire for pleasure.  As to Count 1 involving the Defendant's rape of the victim in the bathroom, the court noted that the Defendant followed the victim into the bathroom and shut the door, thereby isolating her from others.  The victim also testified during the trial that the Defendant entered the bathroom behind her and locked the door.  He pulled his own pants down, pulled her pants down, picked her up, and placed her on the floor.  The Defendant got on top of her and put his penis inside of her.  He only stopped when he heard the victim's brother in the kitchen.

With respect to the Defendant's "cuddle time" referenced in Count 2, the trial court observed that the Defendant crawled into bed with the victim.  The victim confirmed that "cuddle time" was the Defendant's idea and took place only in the bedroom when they were alone and isolated from others.  She said that the Defendant put his hand up her nightgown and then inside her underwear.  The victim recounted how the Defendant moved his hands up and down on her vagina and penetrated her with his finger.  After he finished, the victim would have to pull her pants back up.

We conclude that, through the Defendant's specific behavior and repeated actions, the State proved that at least one of his motivations was to gratify his desire for pleasure or excitement. Because the record supports the trial court's application of enhancement factor (7) to each of the Defendant's convictions, the Defendant is not entitled to relief on this ground.

## B.    PURPOSES AND PRINCIPLES OF SENTENCING

Because the trial court appropriately considered each of the challenged enhancement factors, the Defendant's argument that the trial court abused its sentencing discretion is without merit. Nevertheless, even if these two enhancement factors were misapplied, the Defendant has failed to make the other showing necessary to obtain relief: that the sentence is not supported by other reasons consistent with the purposes and principles of sentencing.

It is now a well-established principle of our sentencing law that even when a trial court misapplies an enhancement factor, that misapplication does not, by itself, warrant a new sentencing hearing. As our supreme court held in *Bise*,

> [A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005. So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld.

*Bise*, 380 S.W.3d at 706. Stated another way, to obtain relief from a within-range sentence, a defendant cannot merely allege that the trial court misapplied enhancement or mitigating factors. Instead, the Defendant must also show that the sentence is not supported by "other reasons consistent with the purposes and principles of sentencing," such that the court "wholly departed" from the sentencing act. *See id.*; *State v. Hendrix*, No. W2015-01671-CCA-R3-CD, 2016 WL 3922939, at *8 (Tenn. Crim. App. July 15, 2016) ("As we previously noted, the court's misapplication of certain enhancement factors does not invalidate its within-range sentence unless the court wholly departed from the Sentencing Act."), *perm. app. denied* (Tenn. Nov. 22, 2016).

In this case, the trial court recognized that the minimum sentence in the range was the "starting place" and should be adjusted by the presence of enhancement and mitigating

factors. *See* Tenn. Code Ann. § 40-35-210(c). Although the Defendant challenges the application of two enhancement factors, he does not challenge the trial court's application of other enhancement factors to both counts. For example, the Defendant does not dispute that the trial court properly applied enhancement factor (14), relating to a breach of private trust, to both counts. Nor does he argue that it also improperly applied enhancement factor (1) to Count 2, given the Defendant's prior rape of the victim in the bathroom. *See, e.g.*, *State v. Hatmaker*, No. E2017-01370-CCA-R3-CD, 2018 WL 2938395, at *6 (Tenn. Crim. App. June 8, 2018) ("The date of the offense, not the date of the conviction, determines whether offenses can be used to enhance punishment." (citation omitted)), *perm. app. denied* (Tenn. Oct. 11, 2018). Importantly, the trial court placed the greatest weight on enhancement factors (14) and (1) in its analysis.[2] Thus, even under the Defendant's argument, the record supports that the trial court properly applied at least two enhancement factors and found that no mitigating factors were present. Tenn. Code Ann. § 40-35-210(b)(5).

The trial court also considered the Defendant's potential for rehabilitation and the need to avoid unwarranted sentencing disparities. It did so by referencing both the risk and needs assessment and statistical data concerning sentencing practices. *See* Tenn. Code Ann. § 40-35-103(5), (3) (stating that sentencing principles include "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant" and that "[i]nequalities in sentences that are unrelated to a purpose of this chapter should be avoided"). In addressing the issue of consecutive sentencing, the trial court further acknowledged that an aggregate sentence should not be greater than necessary to achieve the purposes for which the sentence is imposed. Given the Defendant's age, the absence of release eligibility, and the structured supervision available upon release, the trial court concluded that concurrent sentences "would serve the ends of justice." *See* Tenn. Code Ann. § 40-35-103(2), (4) (providing that "[t]he sentence imposed should be no greater than that deserved for the offense committed" and that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed").

With these considerations, the trial court imposed a sentence for Count 1 that was less than the midpoint in the applicable sentencing range. With Count 2, the court imposed the maximum sentence within the same range, emphasizing the repeated rapes of the same victim. The court's decisions did not "wholly depart" from the sentencing act, and they were supported by "other reasons consistent with the purposes and principles of sentencing." *Bise*, 380 S.W.3d at 706; *State v. Crabtree*, No. M2021-01154-CCA-R3-CD,

---

[2] In its sentencing announcement, the trial court stated that it placed the "greatest emphasis" on enhancement factor (14) and that enhancement factor (1) "weigh[ed] heavy on the [c]ourt."

2023 WL 2133831, at *16 (Tenn. Crim. App. Feb. 21, 2023) ("[A]ny error in the application of enhancement and mitigating factors is no longer a proper basis for this court to reverse a within-range sentence, provided that the trial court articulated other reasons consistent with the purposes and principles of sentencing." (citing *Bise*, 380 S.W.3d at 706)), *no perm. app. filed*. Consequently, given our standard of appellate review, we conclude that even if the challenged enhancement factors were not appropriately applied, we must affirm the within-range sentences. The Defendant is not entitled to relief.

## CONCLUSION

In summary, we hold that the trial court acted within its discretion when it imposed within-range sentences for each of the Defendant's convictions. We respectfully affirm the judgments of the trial court.

s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE